IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

HELEN GREEN, as Administratrix of
the Estate of CLAUDE GREEN, JR.,
Deceased, and as Personal
Representative,

      Plaintiff,

v.                    CIVIL ACTION NO. 1:06-0159

THE CITY OF WELCH, a West Virginia
Political Subdivision, and
ROBERT K. BOWMAN, individually and
in his official capacity as the
Chief of Police of the Welch
Police Department,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendants' Motion to Dismiss (Doc. No. 10) and plaintiff's motion for a hearing on the same (Doc. No. 14).  Having reviewed the parties' briefs and determined that a hearing is unnecessary, the court denies plaintiff's motion.  As set forth in detail below, the court also denies in part and grants in part defendants' Motion to Dismiss.

I.    FACTUAL BACKGROUND

Plaintiff Helen Green is the administratrix of the estate of her late son, Claude Green, Jr.  (Doc. No. 1 at 3.)  Her complaint alleges that on June 21, 2005, her son, Claude Green, Jr., experienced a heart attack while driving in the city of

Welch, West Virginia.  (<u>Id.</u> at 1.)  Mr. Green's passenger, Billy
Snead, was able to bring the vehicle to a stop without injury to
either of the men.  (<u>Id.</u> at 4.)  Snead then attempted to revive
Claude.  Although he was unable to get Claude out of the truck,
Snead attempted to administer cardiopulmonary resuscitation
(CPR), in which he had received training.  (<u>Id.</u> at 5.)  The
complaint asserts that Snead's efforts succeeded in prompting
Claude's heart to beat again, and that Claude gasped for breath.
(<u>Id.</u>)

Two or three minutes after Snead stopped the truck,
defendant Robert K. Bowman, Chief of Police of the city of Welch,
arrived at the scene.  (<u>Id.</u>)  Plaintiff alleges that Bowman
immediately stated that Claude was infected with the Human
Immunodeficiency Virus (HIV), and that he directed Snead to "get
back."  (<u>Id.</u>)  When Snead continued the CPR, Bowman allegedly
grabbed Snead by the shoulders and moved him away from the truck,
telling him again that Claude was HIV positive.  (<u>Id.</u> at 5-6.)
After Bowman again ordered Snead to stay away from Claude, Snead
told the officer that he had "gotten [Claude] to take a breath."
(<u>Id.</u> at 6.)  Bowman is alleged to have responded that "he would
'take care of it.'"  (<u>Id.</u>)  After calling the 911 dispatcher to
request an ambulance, Bowman allegedly positioned himself in
front of the door to the truck without assisting Claude.  (<u>Id.</u>)
When Snead tried to get a look at Claude's condition through the

-2-

truck window, Bowman allegedly directed another officer who had arrived at the scene to take Snead away from the truck. (Id.)

Plaintiff avers that approximately eight to ten minutes passed between Claude's heart attack and the arrival of the ambulance. (Id. at 7.) Upon the arrival of the Emergency Medical Services (EMS) team, Bowman allegedly repeated that Claude was HIV positive. (Id.) The EMS personnel, who recorded this information in their patient care record, apparently performed CPR on Claude on the way to Welch Community Hospital. (Id.) The complaint further asserts that Bowman followed the ambulance to the hospital, where he and the EMS personnel, based on Bowman's information, told the hospital's medical staff that Claude had HIV. (Id.) Despite the efforts of the EMS team and the hospital staff, Claude was pronounced dead shortly after arriving at the hospital. (Id.) A subsequent autopsy confirmed that he died of coronary artery disease. (Id.)

The complaint goes on to assert that Claude was not HIV positive, and that Bowman assumed him to be infected because Claude had been in an intimate relationship with a man. (Id. at 7-8.) Plaintiff further alleges that, "[b]ut for Defendant Bowman's erroneous beliefs that Claude was HIV positive and that HIV could be transmitted through CPR or other physical contact, Bowman would have taken steps to assist Claude," and would not have interfered with others' attempts to assist him. (Id. at 8.)

-3-

The complaint goes on to assert that Bowman is obligated to provide emergency services without regard to the HIV status of the person requiring assistance, and that there is no medical reason for him to have believed that performing CPR on an HIV positive person would put him at risk for infection.  (Id. at 8-9.)  Finally, plaintiff alleges that Bowman's refusal to allow the administering of CPR greatly reduced Claude's chances of surviving his heart attack.  (Id. at 8.)

On March 2, 2006, plaintiff filed her complaint in this court, asserting jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 12132, and asserting supplemental jurisdiction under 28 U.S.C. § 1367.  (Id. at 3.)  Plaintiff alleges that Bowman's conduct violated 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), the West Virginia Human Rights Act (WVHRA), and West Virginia's wrongful death law.  (Id. at 9-14.)  Defendant's Motion to Dismiss (Doc. No. 10) seeks dismissal of all counts except the wrongful death claim.  Below the court addresses plaintiff's causes of action in turn.

## II.  STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing such a motion to dismiss, this court accepts as true the facts as alleged in the complaint, views them

-4-

in the light most favorable to the plaintiff, and recognizes that dismissal is inappropriate unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved in support of his claim.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).  Plaintiff must allege facts in the complaint sufficient to support the claimed legal conclusion.  See Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 326 (4th Cir. 2001).  Moreover, the Fourth Circuit has opined that "a rule 12(b)(6) motion should be granted only in very limited circumstances."  Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

**III. ANALYSIS**

**A.   Counts II and III – 42 U.S.C. § 1983**

Counts II and III of plaintiff's complaint respectively allege Due Process and Equal Protection violations pursuant to 42 U.S.C. § 1983.  Defendants argue that dismissal of these counts is necessary in accordance with Bell v. Board of Education of the County of Fayette, 290 F. Supp. 2d 701 (S.D. W. Va. 2003)(Haden, J.), which held that West Virginia's wrongful death statute is "not available for borrowing under [42 U.S.C.] § 1988 to remedy deficiencies in the civil rights law in a § 1983 action."  Id. at 709.  Plaintiff counters that the better line of reasoning is found in Jones v. George, 533 F. Supp. 1293, 1300 n.15 (S.D. W.

Va. 1982)(Staker, J.)(permitting borrowing of West Virginia's wrongful death law to redress, via § 1983, constitutional claims resulting in death).

42 U.S.C. § 1983 provides a remedy for the violation of federal constitutional rights by state actors. The procedural aspects of a § 1983 action are governed by 42 U.S.C. § 1988(a), which, on its face, directs the court to undergo a three-part inquiry:

> (a) Applicability of statutory and common law. The jurisdiction in civil and criminal matters conferred on the district and circuit courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C. § 1988(a) (2000).

Stated another way, in adjudicating a § 1983 claim, the court shall first apply federal procedural law if it is suitable and "adapted to the object." If there is no such suitable federal law, the second step of the inquiry dictates that the law of the relevant state be applied. Finally, the court is to consider whether the applicable state law is inconsistent with

the federal Constitution and laws, and, if so, the state law is not to be used.  As the United States Supreme Court described this process in <u>Burnett v. Grattan</u>, 468 U.S. 42 (1984), "courts undertake the second step by *considering* application of [state law].  A third step asserts the predominance of the federal interest: courts are to apply state law *only* if it is not 'inconsistent with the Constitution and laws of the United States.'"  <u>Id.</u> at 48 (emphasis added).

The parties do not contest the lack of federal procedural law on the issue of the survivability of the claims plaintiff asserts, and the court accordingly proceeds to consider the application of relevant state law.  West Virginia Code Section 55-7-8a(a) states as follows with regard to the survival of causes of action in West Virginia: "In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person *and not resulting in death*, or for deceit or fraud, also shall survive .  . . ."  (Emphasis added.)  Where the injury results in the death of the victim, West Virginia Code § 55-7-5 governs as follows:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured . . . .

Prior to Judge Haden's decision in <u>Bell v. Board of Education of the County of Fayette</u>, 290 F. Supp. 2d 701 (S.D. W. Va. 2003), the case law in this district allowed prosecution of § 1983 claims seeking recovery for the wrongful death of a decedent.  In <u>Jones v. George</u>, the administratrix of the estate of a West Virginia State Penitentiary inmate brought suit under § 1983 against several state officials alleging the false arrest of, false imprisonment of, denial of adequate medical care to, and wrongful death of the decedent.  After a detailed analysis under § 1988, Judge Robert J. Staker held that the abatement under state law of § 1983 claims for the violation of a decedent's constitutional rights would be permissible where "wrongful death claims are also pleaded and where the state law covering such claims is not, as analyzed and found herein, 'inconsistent with the Constitution and laws of the United States.'"[1]  <u>Jones v. George</u>, 533 F. Supp. 1293, 1305-06 (S.D. W.

_____

[1]  In this context, it is helpful to note the difference between a survival statute and a wrongful death statute:

> "'Wrongful death acts compensate either the survivors, or the estate of the deceased, for losses they have sustained.  Survival statutes . . . permit recovery . . . for damages which the _decedent_ could have recovered had he lived. . . . The survival statute merely _continues_ in existence the injured person's claim after death as an asset of his estate, while the usual wrongful death statute creates a new cause of action . . . based upon the death itself.'"

<u>McDavid v. United States of America</u>, 584 S.E.2d 226, 231-32 (W. Va. 2003)(quoting S. Speiser, <u>et al.</u>, 3 Recovery for Wrongful

Va. 1982).  The _Jones_ court therefore dismissed the plaintiff's claims founded on § 1983 except to the extent they alleged a cause of action for wrongful death.  To that extent, the plaintiff's claim was allowed to proceed under § 1983.  _Id._ at 1306 ("[T]he court orders that plaintiff's claims founded upon 42 U.S.C. § 1983, save any portion of that claim seeking recovery for wrongful death, have abated and are hereby dismissed.").

_Jones_ gave particular consideration to two decisions of the United States Supreme Court: _Robertson v. Wegmann_, 436 U.S. 584 (1978), and _Carlson v. Green_, 446 U.S. 14 (1980).  _Robertson_ presented a situation in which the original plaintiff in a § 1983 suit died prior to trial from causes unrelated to the constitutional violations at issue.  Under the survival law of Louisiana, the forum state in the case, the deceased's claims would have abated because none of the parties necessary for the survival of the suit were still living.  In ruling that the abatement of the action did not create a result inconsistent with federal law or policy, the Court reasoned that "[i]f success of the § 1983 action were the only benchmark, the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant."  _Robertson_, 436 U.S. at 593.  Importantly, the court specifically distinguished the factual scenario before it from the set of circumstances before

Death and Injury, § 14.1 at 3 (3d. Ed., 1992)).

this court, stating, "We intimate no view, moreover, about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death." Id. at 594.

In Carlson, the Supreme Court applied a federal common law rule of survival in an action based on Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)(making available a cause of action, founded directly upon the United States Constitution, against federal officials for deprivation of constitutional rights).  Although it noted the distinctions that may be made between a Bivens action and a § 1983 action, the Jones court concluded that

> . . . Carlson and Robertson, separately, but especially
> when read in pari materia, stand implicitly for the
> proposition that in situations where death results from
> civil rights violations – whether in the Bivens or 42
> U.S.C. § 1983 context – survival of a cause of action
> based on personal injuries resulting from those
> violations is in keeping with the philosophy behind and
> policies of the remedy, and thus perhaps should exist,
> unless the law applicable to viable claims joined with
> the personal injury claims satisfies that philosophy and
> those policies as they apply to the personal injury
> claims.

Jones, 533 F. Supp. at 1304.  The court then determined that its task was to decide whether West Virginia's wrongful death law satisfies § 1983's policies with respect to a plaintiff's claims for her decedent's personal injuries.  Id. at 1304-05.  Judge Staker concluded that the § 1983 policy of deterrence of official misconduct was satisfied by the remedies available under West

-10-

Virginia's wrongful death law, and that the other stated § 1983
policy – compensation of the victim whose constitutional rights
had been infringed – was not at issue in this type of case due to
the victim's death.  Id. at 1305.  Accordingly, the decedent's
§ 1983 claims relating to personal injury were allowed to abate
where a § 1983 wrongful death cause of action remained to satisfy
the policies underlying the federal civil rights legislation.
Id. at 1305-06.

Twenty-one years later, Bell reached the opposite conclusion
through a very different line of reasoning.  In Bell, the court
observed that the Supreme Court of Appeals of West Virginia has
consistently held that West Virginia's wrongful death law does
not revive the decedent's claim in his personal representative,
but rather creates "an entirely new cause of action" to address
the loss sustained by the beneficiaries.  Bell, 290 F. Supp. 2d
701, 709 (S.D. W. Va. 2003)(citing Burgess v. Gilchrist, 17
S.E.2d 804, 806 (W. Va. 1941); Dunsmore v. Hartman, 84 S.E.2d 137
(W. Va. 1954)).  Citing the United State's Supreme Court's
decision in Moor v. County of Alameda, 411 U.S. 693 (1973), for
the proposition that § 1988 does not "authorize the federal
courts to borrow entire causes of action from state law," Bell
concluded that West Virginia's wrongful death action, "as a new
and independent cause of action, is not available for borrowing

-11-

under § 1988 to remedy deficiencies in the civil rights law in a
§ 1983 action . . . ."  <u>Bell</u>, 290 F. Supp. 2d at 709.

It was solely on the basis of <u>Moor</u> that the court in <u>Bell</u>
effectively overruled the <u>Jones</u> case, stating simply in a
footnote that "<u>Jones v. George</u> does not acknowledge or consider
the effect of <u>Moor</u> on the wrongful death issue."  <u>Bell</u>, 290 F.
Supp. 2d at 709 n.8.  <u>Moor</u>, however, was not decided in the
context of the survival of § 1983 actions.  At issue in <u>Moor</u> was
the plaintiffs' argument that, because the law of California, the
forum state, made a county vicariously liable for conduct by its
sheriff and deputy sheriffs that violates federal civil rights
law, § 1988 permits the adoption of such state law into federal
law, thus creating a federal cause of action against the county.
<u>Moor</u>, 411 U.S. at 698-99.  Moreover, in discussing the types of
"gaps" meant to be filled under § 1988 by looking to state law,
the Court in <u>Moor</u> specifically – and apparently approvingly –
cited the law governing survival of civil rights actions upon the
death of either the plaintiff or defendant.  <u>Id.</u> at 702-03 n.14
(citing <u>Brazier v. Cherry</u>, 293 F.2d 401 (5th Cir. 1961)(state
survival law applied in favor of widow and estate of decedent
allegedly beaten to death by policemen)).

Defendants distinguish <u>Brazier</u> merely on the grounds that
the court in <u>Bell</u> was aware of the <u>Brazier</u> case; indeed, it was
cited in the <u>Bell</u> opinion as one of a number of cases at odds

-12-

with the court's ruling.  Bell, 290 F. Supp. 2d at 708.  This
argument, however, does little to mitigate the discord inherent
in Bell's outright reliance on the Moor case in refusing to
permit the borrowing of the wrongful death action under § 1988.
As explained above, it is apparent in Moor that the Supreme Court
meant to distinguish Moor's circumstances from state law gap-
filling in the context of survival laws, as evidenced by its
citation to the Brazier case.  Moor, 411 U.S. at 702-03 n.14.

It is apparent from defendants' reply memorandum that they
misconstrue the precise rulings of the Jones and Bell cases.  The
following passage is illustrative:

> In Jones v. George, Judge Staker specifically determined
> under Robertson that West Virginia's wrongful death law
> had remedies "suffic[ient] to meet the § 1983 'deterrence
> of official misconduct' policy," and, thus, the West
> Virginia law was "not, as analyzed and found [there]in,
> 'inconsistent with the Constitution and the laws of the
> United States.'" And Judge Haden affirmed this conclusion
> (that West Virginia law abates a decedent's § 1983
> claims), notwithstanding that this result was
> "inconsistent with the majority of federal courts
> considering the issue under similar state law." . . . He
> nonetheless dismissed the plaintiff's constitutional
> claims relating to the plaintiff's allegedly wrongful
> death.

(Doc. No. 18 at 3.)  Defendant's statement that the Bell case
affirmed the holding of Jones v. George evinces what the court
must consider to be a misunderstanding of the cases' respective
outcomes.  Whereas the Jones court permitted the abatement of the
decedent's § 1983 claims where a § 1983 wrongful death claim
remained to satisfy the purposes of the civil rights legislation,

-13-

the Bell court found that all of the claims for constitutional violations relating to the decedent's death must abate.[2] Bell, 290 F. Supp. 2d at 709 ("For this reason, the Court DISMISSES Bell's constitutional claims related to [the decedent's] wrongful death.")(emphasis in original).

In so ruling, the Bell court positioned itself at odds with every other circuit to have heard such a case.  As plaintiff observes, although the Fourth Circuit has not addressed this precise issue, "every other Circuit that has considered the question of the survival of constitutional claims has held that where, as in this case, the constitutional violation is alleged to have resulted in the death of the victim, a § 1983 claim can be brought by an appropriate representative under state wrongful death law, or by a representative of the victim's estate, notwithstanding restrictive state law."  (Doc. No. 15 at 5-6 (citing Carringer v. Rodgers, 331 F.3d 844, 850 (11th Cir. 2003); Andrews v. Neer, 253 F.3d 1052, 1057-58 (8th Cir. 2001); Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996); Berry v. City of Muskogee, 900 F.2d 1489, 1504-07 (10th Cir. 1990); Bass v. Wallenstein, 769 F.2d 1173, 1189-90 (7th Cir. 1985); Jaco v.

_____

[2]  The Bell court did permit the survival of the decedent's 28 U.S.C. § 1983 claims relating to the sexual abuse he was alleged to have suffered during his lifetime.  Bell, 290 F. Supp. 2d at 713.  This the court allowed, of course, pursuant to West Virginia Code Section 55-7-8a(a), because the sexual abuse was not alleged to have caused the decedent's death.

Bloechle, 739 F.2d 239, 242-45 (6th Cir. 1984); Brazier v.
Cherry, 293 F.2d 401, 407-09 (5th Cir. 1961).)

In reaching its decision, the Bell court does not appear to
have addressed the third step of the § 1988 inquiry set forth
above; the opinion gives no indication that the court considered
whether it might be inconsistent with the Constitution and laws
of the United States to allow the abatement of all § 1983 actions
for constitutional violations so severe as to cause the victim's
death.  Bell ignores the "predominance of the federal interest"
described in Burnett v. Grattan, 468 U.S. 42, 48 (1984), and does
so under circumstances that create a most unjustly macabre
result.  Surely violent injury that would kill is "not less
prohibited than violence which would cripple."  Brazier, 293 F.2d
at 404.  Moreover, consideration of the dominant federal interest
in this setting does not misapply the Supreme Court's holding in
Robertson, as defendant argues (Doc. No. 18 at 2-3), as Robertson
specifically excepted from its holding the set of facts where the
constitutional deprivation, itself, caused the death of the
victim.  See supra p. 4-5.

Defendants argue that, with respect to this third step of
the inquiry, the court ought to conclude that West Virginia's
wrongful death law provides damages that are of the type that
must be available in § 1983 cases, and that it is accordingly
perfectly consistent with the remedial purposes of § 1983 even

-15-

though it is not a federal remedy.  (Doc. No. 18 at 4-7.)  This
argument, however, disregards one of the fundamental objectives
of Congress in enacting this civil rights legislation:

> [The legislative history of the civil rights legislation]
> makes evident that Congress clearly conceived that it was
> altering the relationship between the States and the
> Nation with respect to the protection of federally
> created rights; it was concerned that state
> instrumentalities could not protect those rights; it
> realized that state officers might, in fact, be
> antipathetic to the vindication of those rights; and it
> believed that these failings extended to the state
> courts.

Mitchum v. Foster, 407 U.S. 225, 242 (1972).  It is precisely
because of this concern for the protection of federally created
rights that a state remedy may not be substituted outright for
that provided by § 1983.  "The federal remedy is supplementary to
the State and the state remedy need not be first sought and
refused before the federal one is invoked."  Brazier, 293 F.2d at
405 (quoting Monroe v. Pape, 365 U.S. 167, 183 (1961)).

       To be sure, consistency with the Constitution and laws of
the United States does not necessitate under any and all
circumstances the availability of the federal remedy provided by
28 U.S.C. § 1983.  The Supreme Court's holding in Robertson is
ample illustration of that point.  What it does require, however,
is a faithful application of the three-part analysis Congress
prescribed in § 1988, as well as due respect for the protection
of federal constitutional rights that is at the very heart of the
civil rights legislation.  With this in mind, the court must

follow the reasoning of <u>Jones v. George</u>.  Accordingly, to the extent plaintiff's 28 U.S.C. § 1983 claims (Counts II and III) seek recovery under a theory of wrongful death, defendants' motion to dismiss is denied.

**B.    Count I – The Americans With Disabilities Act**

Count I of plaintiff's complaint asserts that Claude was disabled within the meaning of the ADA[3] "because he was regarded by Defendant Bowman as having HIV."  (Doc. No. 1 at 9.)  It further alleges that Bowman's conduct as described above constitutes a violation of 42 U.S.C. § 12132, which prohibits public entities from discriminating against disabled persons. (<u>Id.</u> at 10.)

Defendants contend that plaintiff's ADA claim must be dismissed as not having survived his death.  (Doc. No. 11 at 6-7.)  They base this argument on an application of state survival law pursuant to 42 U.S.C. § 1988(a).  (<u>Id.</u>)  In opposition, plaintiff argues that the § 1988(a) state law gap-filling procedure does not apply to remedy procedural deficiencies in the

_____

[3]   42 U.S.C. § 12102(2) provides as follows:

(2) Disability.  The term "disability" means, with respect to an individual –
     (A)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
     (B) a record of such an impairment; or
     (C) being regarded as having such an impairment.

ADA; rather, the court is to apply federal common law to resolve issues of survival.  (Doc. No. 15 at 14-19.)

There is a split of authority as to whether § 1988(a) applies to the ADA's procedural omissions, and the Fourth Circuit has not yet addressed the issue.  Those arguing that § 1988(a) does not apply find considerable support for their position in the plain language of the statute.  The section applies with regard to the "jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication . . . ."  42 U.S.C. § 1988(a).  The historical notes accompanying the statute explain that the titles referenced are those contained in the Revised Statutes, or the civil rights statutes of the Reconstruction Era.  In its original form, Title 13 read "this Title," Title 24 read "Title 'CIVIL RIGHTS,'" and Title 70 read "Title 'CRIMES.'"  Title 24 of the Revised Statutes consisted of present-day §§ 1981-1983, 1985-1987, and 1989-1994 of Title 42.

The ADA, which is codified at 42 U.S.C. §§ 12131 <u>et seq.</u>, is not among the statutes specifically enumerated in § 1988(a).  Moreover, Congress has amended § 1988 since the ADA was enacted in 1990, but has not expanded the language of subsection (a) to bring additional statutes within its reach.  <u>See</u> Brian Owsley,

<u>Survivorship Claims Under Employment Discrimination Statutes</u>, 69
Miss. L.J. 423 (1999).  Under the principle that a court's
analysis must end with a statute's plain language absent
ambiguity in the language of the statute, it would seem that
§ 1988(a) is inapplicable to the ADA.  See <u>Hillman v. I.R.S.</u>, 263
F.3d 338, 342 (4th Cir. 2001)("The general rule is that unless
there is some ambiguity in the language of a statute, a court's
analysis must end with the statute's plain language (the Plain
Meaning Rule).").  Indeed, many courts have followed this line of
reasoning in the context of survivorship of ADA actions.  <u>See</u>
<u>Estwick v. U.S. Air Shuttle</u>, 950 F. Supp. 493, 498 (E.D.N.Y.
1996); <u>Caraballo v. South Stevedoring, Inc.</u>, 932 F. Supp. 1462,
1466 (S.D. Fl. 1996) (addressing survival of claim for punitive
damages under the ADA); <u>Hanson v. Atlantic Research Corp.</u>, No.
4:02CV00301, 2003 U.S. Dist. LEXIS 2285, at *9-13 (E.D. Ark. Feb.
14, 2003); <u>Hager v. First Va. Banks, Inc.</u>, No. 7:01CV00053, 2002
U.S. Dist. LEXIS 412, at *8-9 n.2 (W.D. Va. Jan. 10, 2002);
<u>E.E.O.C. v. Deloitte & Touche, LLP</u>, No. 97 Civ. 6484, 2000 U.S.
Dist. LEXIS 10308, at *22 (S.D.N.Y. July 25, 2000)(following
<u>Estwick</u>); <u>Pokorney v. Miami Valley Career Tech. Center</u>, No. C-3-
94-247, 1997 U.S. Dist. LEXIS 23760, at *15-18 (S.D. Ohio March
31, 1997).

These courts follow the rule that, in the absence of
specific direction from Congress, the survival of a federal cause

of action is governed by federal common law.  Estwick, 950 F.

Supp. at 498 (citing Asklar v. Honeywell, Inc., 95 F.R.D. 419 (D.

Conn. 1982)); Caraballo, 932 F. Supp. at 1466 (citing U.S. v. NEC

Corp., 11 F.3d 136, 137 (11th Cir. 1993)).  Under federal common

law, whether an action survives a party's death depends on

whether the recovery sought is deemed "remedial" or "penal."  NEC

Corp., 11 F.3d at 137.  "A remedial action is one that

compensates an individual for specific harm suffered, while a

penal action imposes damages upon the defendant for a general

wrong to the public.  It is well-settled that remedial actions

survive the death of the plaintiff, while penal actions do not."

Id.  To determine the nature of the action, courts consider three

factors: "(1) whether the purpose of the statute was to redress

individual wrongs or more general wrongs to the public; (2)

whether recovery under the statute runs to the harmed individual

or to the public; and (3) whether the recovery authorized by the

statute is wholly disproportionate to the harm suffered."  Murphy

v. Household Fin. Corp., 560 F.2d 206, 209 (6th Cir. 1977).

Under this test, courts following the federal common law approach

conclude that, with the exception of claims for punitive damages,

actions under the ADA survive the plaintiff's death.  See cases

cited supra p. 19; Caraballo, 932 F. Supp. at 1466.

    Plaintiff urges the court to follow this line of reasoning,

and cites Fariss v. Lynchburg Foundry, 769 F.2d 958, 962 n.3 (4th

Cir. 1985), in support of her position.   In <u>Fariss</u>, the Fourth Circuit applied federal common law to determine survival in an action under the Age Discrimination in Employment Act (ADEA). <u>Id.</u>  Likening the ADA to the ADEA and other non-Reconstruction Era anti-discrimination statutes, plaintiff contends that this precedent militates in favor of adopting the federal common law approach.  (Doc. No. 15 at 15-16.)

Defendants' position that § 1988(a) applies to remedy procedural deficiencies in the ADA likewise finds support in Fourth Circuit precedent.  In <u>J.S. v. Isle of Wight County School Board</u>, 402 F.3d 468 (4th Cir. 2005), the court held that the section applies to any such deficiencies in the Rehabilitation Act, the pre-ADA legislation that prohibits discrimination on the basis of disability in federally funded programs and activities. <u>Id.</u> at 473-74; <u>see</u> 29 U.S.C. § 794.  The court has also acknowledged the Congressional direction that courts apply a coordinated interpretation to the Rehabilitation Act and the ADA "'to prevent[] imposition of inconsistent or conflicting standards for the same requirements' under the two statutes." <u>Rogers v. Dept. of Health and Env. Control</u>, 174 F.3d 431, 433-34 (4th Cir. 1999)(quoting 42 U.S.C. § 12117(b)).  In light of the many similarities between the acts, the Fourth Circuit has held that relevant precedent construing the Rehabilitation Act "may

inform our understanding of what § 12132 requires." Rogers, 174 F.3d at 434.

It is on this same basis that a number of other courts have applied § 1988(a)'s gap-filling mechanism to claims raised under the ADA.  Indeed, it appears that this viewpoint is favored by the majority of courts.  Everett v. Cobb County School Dist., 138 F.3d 1407, 1409 (11th Cir. 1998)(on the issue of statute of limitations); Holmes v. Texas A&M Univ., 145 F.3d 681, 684 (5th Cir. 1998)(statute of limitations); Soignier v. American Bd. of Plastic Surgery, 92 F.3d 547, 550-51 (7th Cir. 1996)(statute of limitations); Morrissey v. Rockingham Mem. Hosp., No. 5:06CV00005, 2006 U.S. Dist. LEXIS 4627, at *2 (W.D. Va. Feb. 7, 2006); Thompson v. Va. Dept. of Game and Inland Fisheries, No. 1:05CV00109, 2006 U.S. Dist. LEXIS 29796, at *9 (W.D. Va. May 14, 2006)(statute of limitations); Speciner v. Nationsbank, N.A., 215 F. Supp. 2d 622, 634 (D. Md. 2002)(statute of limitations); Larson v. Snow College, 189 F. Supp. 2d 1286, 1292 (D. Utah 2000); Allred v. Solaray, Inc., 971 F. Supp. 1394, 1396 (D. Utah 1997); Roe v. County Comm'n, 926 F. Supp. 74, 78 (N.D. W. Va. 1996)(statute of limitations); United States v. Morvant, 843 F. Supp. 1092, 1095 (E.D. La. 1994); Rosenblum v. Colorado Dept. of Health, 878 F. Supp. 1404, 1408-09 (D. Colo. 1994).

The court will therefore apply West Virginia law pursuant to § 1988(a) to determine the survivability of plaintiff's ADA

claim.  For the reasons discussed above in the context of § 1983, the court finds that the abatement of a decedent's ADA claims is permissible where an ADA claim for that decedent's wrongful death remains to satisfy the purposes of the legislation.  The court believes this result to be consistent with Congress' legislative acknowledgment that "society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment."  <u>School Board of Nassau County v. Arline</u>, 480 U.S. 273, 284 (1987)(on the issue of the Rehabilitation Act).  Accordingly, defendants' Motion to Dismiss as to Count I is denied to the extent plaintiff's ADA cause of action seeks recovery under a theory of wrongful death.

**C.   Count IV – The West Virginia Human Rights Act**

Count IV of plaintiff's complaint seeks recovery under the West Virginia Human Rights Act, W. Va. Code §§ 5-11-1 <u>et seq.</u> (Doc. No. 1 at 13.)  Defendants argue for dismissal on the basis that any claim Claude may have had under the WVHRA abated at his death.  (Doc. No. 11 at 7-8.)  Plaintiff contends that "she is entitled to pursue the state human rights violation through Count V ('Wrongful Death'), because Defendant Bowman's discrimination against Claude is a wrongful act that resulted in Claude's

death." (Doc. No. 15 at 19.) As a result, plaintiff concludes, "dismissal of Count IV is unnecessary."[4] (Id.)

Whereas the court permits survival of plaintiff's wrongful death actions under § 1983 and the ADA in order to achieve the necessary balance of competing interests dictated by § 1988(a), the analysis applied in Sections A and B above does not come into play with regard to the purely state-law claim asserted in Count IV. Rather, the court must simply determine whether a claim under the WVHRA is a personal injury action such that West Virginia Code § 55-7-8a requires abatement. Because the West Virginia Supreme Court of Appeals construes claims under the WVHRA as personal injury actions, McCourt v. Oneida Coal Co., Inc., 425 S.E.2d 602, 606 (W. Va. 1992), the court concludes that plaintiff's WVHRA claim did not survive the decedent's death. Accordingly, defendants' Motion to Dismiss is granted as to Count IV.

IV. **CONCLUSION**

For the reasons set forth above, the court (1) **DENIES** as unnecessary plaintiff's Motion for Oral Hearing (Doc. No. 14); (2) **DENIES** defendants' Motion to Dismiss (Doc. No. 10) to the

---

[4] Plaintiff argues, in the alternative, that "to the extent that Defendants prevail on their defense that their violation of the WVHRA did not cause Claude's death, Plaintiff's disability claim would survive under W. Va. Code § 55-7-8a." (Doc. No. 15 at 19.) The court is unconvinced by this line of reasoning, and will not address it.

extent Count I of the complaint states a wrongful death claim under the Americans with Disabilities Act; (3) **DENIES** the Motion to Dismiss to the extent Counts II and III state wrongful death claims under 42 U.S.C. § 1983; and (4) **GRANTS** the Motion to Dismiss with regard to Count IV.  Defendants' motion does not seek dismissal of Count V, which also remains viable.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED** this 22nd day of December, 2006.

ENTER:

David A. Faber
Chief Judge